IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DISTRICT OF COLUMBIA,<br>A Municipal Corporation<br>One Judiciary Square<br>441 4th St., N.W.<br>Washington, D.C. 20001<br><br>            Plaintiff,<br><br>v.<br><br>LYNDA H. CAMALIER,<br>Mother and next friend of F.C.,[1] a minor<br>2848 McGill Terrace, N.W.<br>Washington, D.C.  20008<br><br><br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. _____ |

## COMPLAINT

(For declaratory and injunctive relief, reversal of administrative order)

### JURISDICTION

1. This Court has original jurisdiction over this matter pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§1400 *et seq* ("IDEA").  Declaratory relief is authorized by 28 U.S.C. §§2201 and 2202.

2. Plaintiff has exhausted its administrative remedies and appeals a May 26, 2005, Hearing Officer's Determination and Order ("HOD"), which was affirmed by a July 21, 2005, Disposition of the District of Columbia Public Schools' ("DCPS") Motion for Reconsideration and New Hearing.

---

[1] The minor will be referred to as F.C., pursuant to LCvR 5.4(f)(2).

## PARTIES

3. Plaintiff District of Columbia is a municipal corporation.

4. F.C., a minor child who resides in the District of Columbia, was born on July 25, 1995, and has been identified as a student eligible to receive special education and related services under the IDEA.

5. Defendant Lynda Camalier is the mother and legal guardian of F.C.

## FACTUAL ALLEGATIONS

6. On January 11, 2005, DCPS convened an initial Individualized Educational Program ("IEP") meeting to determine whether F.C. needed special education services.

7. Currently, and at the time of the meeting, F.C. has attended the Lab School, a private school.

8. Based on several evaluations of F.C. and opinions of the team members, the team determined that F.C. is Learning Disabled and qualifies for special education services.

9. The team drafted an IEP that called for a combination general education and resource setting (a "pull-out program") for F.C.

10. The IEP also indicated that F.C. should receive 20 hours per week of specialized instruction, one and a half hours per week of speech therapy, two hours per week of occupational therapy, and one hour per week of psychological services.

11. Based on the specifications of F.C.'s IEP, DCPS proposed Oyster Elementary School, a public school within the DCPS, as an appropriate placement for F.C.

12. At the meeting, Defendant indicated that she neither agreed to nor opposed Oyster and wanted to visit the school before deciding whether she would send F.C. there.

13. Because of concerns about the proposed placement and some of the specifications of the IEP, Defendant did not sign the IEP (a signature would indicate consent and would mark the beginning of services).

14. After receiving an independent evaluation from Defendant on February 2, 2005, and reviewing that evaluation, DCPS convened another IEP meeting on March 16, 2005.

15. The March 16, 2005, IEP required an additional half hour per week of speech therapy.

16. DCPS continued to assert that Oyster was an appropriate placement for F.C.

17. Defendant again did not sign the IEP.

18. On April 5, 2005, Defendant requested a due process hearing at the DCPS Student Hearing Office to, among other things, challenge the team's decision not to place F.C. in a full-time special education program and DCPS' proposed placement at Oyster.

19. On May 17, 2005, a due process hearing was convened.

20. At the hearing, DCPS was only permitted to put on one witness—Special Education Coordinator and Teacher Rebecca Begazo from Oyster.

21. At the hearing, Ms. Begazo testified that Oyster could implement F.C.'s IEP.

22. She further testified that, as the only Special Education Teacher at Oyster, she could accommodate F.C.'s needs.

23. While she testified that her schedule was currently filled, if F.C. had enrolled at Oyster, she, along with school personnel and the principal, could adjust their schedules to provide services to F.C.

24. She also indicated that the principal could hire additional staff to accommodate F.C., if she was not able to service every student requiring special education services.

25. Following the close of Ms. Begazo's testimony, the student's counsel moved for judgment on the basis that DCPS failed to meet its burden in demonstrating that it provided F.C. with a free appropriate public education.

26. The hearing officer made a directed finding that DCPS did not provide F.C. with an appropriate placement because he determined that Oyster could not implement F.C.'s IEP at the time of the proposed placement.

27. As such, the hearing officer based his decision about whether Oyster could implement F.C.'s IEP on Ms. Begazo's current schedule, rather than considering that her current schedule would be adjusted to accommodate F.C., as soon as he registered at Oyster.

28. Also, the hearing officer did not allow DCPS to call two of its witnesses: Oyster Principal Marta Guzman and DCPS Clinical Social Worker and Case Manager Cindy Brown.

29. At least in part because DCPS was prevented from fully litigating its case, the hearing officer held that DCPS did not meet its burden.

30. On May 26, 2005, the hearing officer issued his decision, finding for the student.

31. In his decision, the hearing officer ordered DCPS to fund F.C.'s private school placement at the Lab School for the 2004-2005 school year.

32. On June 3, 2005, DCPS filed its Motion for Reconsideration and New Hearing.

33. On June 23, 2005, the parents filed their Opposition to DCPS Motion for Reconsideration and New Hearing.

34. In its Motion, DCPS asserted that the two witnesses that the hearing officer did not allow DCPS to call would have demonstrated the availability of resources to accommodate the IEP services for F.C.

35. On July 21, 2005, the hearing officer denied the Motion and affirmed his May 26, 2005, decision.

36. Defendant, on behalf of DCPS, here appeals that decision.

## APPLICABLE LAW

37. The IDEA requires that DCPS provide a free appropriate public education to students in need of special education services who reside in the District of Columbia.

38. The IDEA requires that DCPS provide an appropriate placement based on a student's IEP.

39. By proposing a school placement that could implement F.C.'s IEP, DCPS met the requirements in paragraphs 36-37.

## COUNT I

40. Plaintiff herein incorporates by reference the allegations in the above paragraphs 1-39.

41. The hearing officer erred and abused his discretion when he prevented DCPS from fully presenting its case and when he made a directed finding for the student about placement.

42. The hearing officer further erred when he did not take into account Oyster's ability to change the schedules of service providers to accommodate F.C.'s schedule, once he registered at the school.

43. The hearing officer erred when he ordered DCPS to fund F.C. at the Lab School—a private school placement—when DCPS had made an appropriate public school placement at Oyster.

## RELIEF

WHEREFORE, Plaintiff respectfully asks that the Court grant the following relief:

1. Reverse the Hearing Officer's Determination;
2. Find Oyster Elementary School to be an appropriate placement for F.C.;
3. Hold that DCPS provided F.C. with a free appropriate public education, pursuant to the IDEA;
4. Award Plaintiff the expense of litigation, costs, and interest; and
5. Order any such other relief as the Court deems just and proper.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General of the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ Edward P. Taptich
EDWARD P. TAPTICH [#012914]
Chief, Equity Section 2

|  |  |
|---|---|
| **August 22, 2005** | /s/ Damon Pace<br>DAMON PACE [#451351]<br>Assistant Attorney General<br>441 Fourth Street, N.W.<br>Sixth Floor South<br>Washington, D.C. 20001 |