UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| District of Columbia,         ) | |
|         ) | |
|     Plaintiff,         ) | |
|         ) | |
|     v         ) | Civ. A. No. 05-1677 (TFH) |
|         ) | |
| Lynda H. Camalier,         ) | |
|    Mother and next Friend of F.C,         ) | |
|    A Minor,         ) | |
|         ) | |
|     Defendant.         ) | |

**ANSWER and COUNTER CLAIMS of DEFENDANT**

Defendant Lynda H. Camalier, through counsel, provides the following Answer and Counter Claims to the Complaint, with paragraph numbers corresponding to the paragraphs of the Complaint:

1. Admit that federal Courts have jurisdiction over timely appeals from final Hearing Officer Determinations, but deny that plaintiff s action was filed timely. Admit that 28 USC §§ 2201 and 2202 authorize declaratory relief, but deny that any relief is possible for plaintiff due to the late filing of the Complaint.

2. Admit that plaintiff exhausted administrative remedies with the May 26, 2005 Hearing determination. Deny that there is any provision for plaintiff s Motion for Reconsideration and New Hearing, but admit that plaintiff did file such a motion in the administrative proceeding, which resulted in a second ruling by the Hearing Officer issued on July 21, 2005.

3. Admit

4. Admit

5. Admit

6. Admit

7. Admit

8. Admit

9. Deny

10. Admit

11. Deny

12. Admit that she neither agreed to nor opposed Oyster and that she wanted to visit the school to see the program, but deny that she stated that she would send F.C. to Oyster.

13. Admit that defendant did not sign the IEP, but deny that the remaining allegations in ¶ 13.

14. Admit

15. Admit

16. Admit

17. Admit

18. Admit

19. Admit

20. Admit

21. Deny

22. Deny

23. Deny

24. Deny

25. Admit

26. Admit that the Hearing Officer made a directed finding that DCPS could not meet its burden of proof that it had offered F.C. an appropriate placement, and refer to the determination for the precise rationale.

27. Deny

28. Admit

29. Deny

30. Admit, and defendant refers to the Determination for the full text of the ruling.

31. Admit that the Hearing Officer made such an order *inter alia*, and defendant refers to the Determination for the full text of the ruling.

32. Admit

33. Admit

34. Defendants neither admit nor deny, but rather refer to the DCPS Motion for the complete statement of the arguments made therein.

35. Admit.

36. Admit.

37.  Paragraph 37 is a statement of legal conclusions as to which defendant is not required to respond.

38. Paragraph 38 is a statement of legal conclusion as to which defendant is not required to respond.

39. Deny.

40. Defendant repeats the responses provided above for ¶s 1-39.

41. Deny.

42. Deny.

43. Deny.

**Defenses**

44. The Complaint fails to state a claim on which relief can be granted;

45. DCPS did not write an appropriate IEP for F.C. on either January 11, 2005 or March 16, 2005;

46. DCPS failed to complete the evaluation and eligibility determination within 120 days of the request for special education services;

47. DCPS failed to give appropriate written Notice on January 11, 2005 and March 16, 2005;

48. Oyster Elementary School was not an appropriate placement for F.C. at any time from the date of the placement notice on January 11, 2005 through the date of the hearing determination on May 26, 2005, and the record below does not support a finding that Oyster ever had a program that was appropriate for F. C.;

49. DCPS did not offer F.C. with a Free Appropriate Public Education for 2004-05 pursuant to the IDEA;

50. During SY 2004-05, F.C. received educational benefit at the Lab School of Washington, a specialized program for Learning Disabled students in Washington, DC;

51. Under *Florence County School District Four v. Carter*, 512 U.S. 7(1993) Defendant Camalier is entitled to reimbursement for tuition and related services paid for F.C. s program at Lab School from at least December 8, 2004 through May 26, 2005;

52. At the due process hearing DCPS did not make a detailed proffer of the evidence that

would have been provided by Ms. Guzman or Ms. Brown had they been permitted to testify. Failure to make such a detailed proffer during the hearing prevents them from presenting a proffer in a motion for reconsideration. Therefore, the motion for reconsideration for failure to allow Ms. Guzman and Ms. Brown to testify, should have been denied.

53. The Hearing Officer granting the parent s motion for directed finding on failure to offer FAPE to F.C. in the existing program at Oyster was proper, and therefore, must be affirmed.

## DEFENDANT S COUNTER CLAIMS

54. This Court has jurisdiction pursuant to 20 U.S.C.A. § 1415(i)(2)(West Cum. Ann. Pocket Part 2005) and 28 U.S.C.A. §1331. Venue lies in the District of Columbia pursuant to 28 U.S.C.A. §1391. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

55. F.C. is a monolingual child who speaks only English. He has severe learning disabilities and he resides with his family within the attendance boundaries of the only bi-lingual elementary school in the District of Columbia, Oyster Elementary School. Every classroom for every grade at Oyster is co-taught by one teacher who is English speaking and one who speaks Spanish. The school strives to half the students in each class have English as their dominant language and half Spanish as their dominant language. Almost all subjects are taught in English and Spanish to all children. Special education services at Oyster are provided for the most part in an inclusion model, in which the special education teacher joins the eligible student in his or her general education classroom to provide additional support for those skills designated on the individual student s Individualized Education Program. Ms. Begazo testified that she works with

the student in the same classroom and in  the presence of all the other class members and the

other two teachers.

56. The December, 2004  admission policy for out-of-boundary students at Oyster

Elementary entering at Second Grade level or a higher grade level requires each applicant to

demonstrate grade appropriate reading, oral and writing skills in English and Spanish.

57. F.C. repeated Kindergarten at a private school in Washington, DC. During both years

of Kindergarten and first grade he had individual tutoring during the school year and over the

summer.  He received speech language services twice weekly during the 2002-03 school year.

For SY 2003-04,  his parents enrolled him in Lab School of Washington, a specialized program

for learning disabled students.

58. During the summer of 2004, starting in July, defendant tried to register F.C. at Oyster,

but was rebuffed.  When she was eventually able to garner school cooperation to enable her to

complete the enrollment process in August, she was directed by Oyster Principal Guzman to

Eaton Elementary School in the adjacent attendance zone, because it was a monolingual school.

Ms. Camalier contacted the principal at Eaton, but was told not only was there no opening for

F.C. at Eaton, but there was a waiting list for out-of- boundary students his age.  She returned to

Oyster to pursue her request for special education services, because she was told that was

necessary.

59. DCPS determined eligibility, wrote an IEP and proposed Oyster as the school

placement for F.C. on January 11, 2005, after 120 days had run out on or about December 8,

2004. DCPS offered no special education services to F.C. prior to January 11, 2005.

Defendant alleged in her hearing request, *inter alia*, that the school district failed to

complete the process for evaluation eligibility and placement in a timely manner within 120 days,
failed to develop appropriate Individualized Education Programs for F.C. on either January 11 or
March 16, 2005, failed to issue proper notices as required by the IDEA and both federal and local
regulations, and that placement of FC as a monolingual, English-speaking child with learning
disabilities and significant memory deficits in a bilingual school for the first time in the 3rd grade
at age 9 in which school classroom instruction in every grade is provided for core subjects during
part of the day in English and part of the day in Spanish was inappropriate.

60. At the hearing, DCPS  first witness was Ms. Begazo. Ms. Begazo intentionally
interrupted her telephonic testimony on cross examination to go to a doctor s appointment
without leave of the Hearing Officer.  The Hearing Officer gave DCPS the benefit of an early
lunch break, and permitted DCPS to recall Ms. Begazo to complete her testimony telephonically.

61. Ms. Begazo testified that she was the only special education teacher at Oyster, that her
schedule did not permit her to provide 20 hours of specialized instruction for F.C. each week on
a pull-out basis.  She testified that all of his pull out services would be provided in an office
setting. Ms. Begazo did not know who would teach F.C. social studies or science, both subjects
that were part of the curriculum for students in his age group. She did not know which of the two
3rd grade classrooms at Oyster F.C. would enter.  The 3rd grade classes have between 21 and 24
students per classroom according to Ms. Begazo. She testified that decision about the schedule
and placement would not be made until the student arrived.

62. After Ms. Begazo completed her testimony, DCPS proposed to present testimony
from two witnesses, Ms. Guzman and Ms. Brown.  The Hearing Officer refused to hear their
testimony before ruling on the parent s motion for a directed finding.

63. The parent presented limited evidence from Ms. Duncan, a Lab School administrator, about the Lab School of Washington, F.C. s educational program and services at Lab, and the benefits F.C. received at Lab, and Dr. Sheila Iseman, as an expert in educational benefit, on the same subjects. The parent did not put on testimony as to why she, Dr. Iseman or Ms. Duncan, who had participated in the IEP meeting, had concluded that the DCPS IEPs, program and placement at Oyster were not appropriate, because it was no longer necessary after the Hearing Officer granted the parent s motion for a directed finding.

64. The Hearing Officer found, and DCPS has not appealed this finding, that 120 days expired on December 7, 2004, based upon the date of requested evaluation stipulated by the parties as August 9, 2004.

65. The Hearing Officer found that DCPS had never completed a schedule to deliver the special education services described in the IEP on March 16, 2005, and DCPS has not appealed this finding.

66. The Hearing Officer found that had F.C. attended Oyster, he would have been the only special education student at the school out of a total of 20, speaking English only.

67. The Hearing Officer reserved issues 2 and 4, regarding the appropriateness of the IEPs, to the parent.

68. The Hearing Officer ruled that issues 3 and 5 were mooted. Those issues will not be moot if the determination is reversed.

69. The Hearing Officer ruled that the parent was entitled to reimbursement for tuition. occupational therapy and speech language therapies at Lab School from December 8, 2004 through May 26, 2005, and, with  stay put  protection, placed F.C. at Lab School of Washington

with DCPS funding, through the end of SY 2004-05.

70. The Hearing Officer made no ruling for future placement for the student beyond the balance of SY 2004-05, and denied the parents request that the placement at Lab School be extended through March 16, 2006, a year from the date on which DCPS proposed to place F.C. at Oyster Elementary School.

71. The Hearing Officer notified the parties that his decision was   THE FINAL ADMINISTRATIVE DECISION. Appeal can be made to a court of competent jurisdiction within thirty (30) days of this decision.

72.  The factual record supports the findings and conclusions of the Hearing Officer. The Hearing Officer correctly concluded that DCPS was required to offer FAPE and that it had not done so because at the time that Oyster was offered, the resources to implement the IEP did not exist at Oyster, based upon the testimony of the only special education teacher at Oyster who also served as the school s Special Education Coordinator.

### Legal Authority

73.  The burden of proof in administrative hearings under the IDEA and the IDEIA was on DCPS to prove that it has offered F.C. FAPE pursuant to 5 D.C.M.R. § 3030.3.

74.  Prior written notice requires, *inter alia*, a description of the action proposed or refused, an explanation of why the agency proposed or refused to take the action, a description of the options the agency considered and the reason the options were rejected.  20 U.S.C.A. §1415(c); 34 C.F.R.§ 300.503 and 5 D.C.M.R. § 3025.1

75. The Stay Put provision of the IDEA mandates that the child remains in his current educational placement pending resolution of any dispute between the parent and the school

district. 20 U.S.C. §1415(j).

76.  The parent is entitled to reasonable attorneys  fees as part of costs in any proceeding under the IDEA in which the parent is the prevailing party. 20 U.S.C. § 1415(i)(3).

### Counter Claim I

75.  The Hearing Officer did not have jurisdiction to consider a motion for reconsideration for testimony from other witnesses without DCPS making a detailed proffer during the hearing of the content of the testimony that would have been presented.  No such proffer was made until after the hearing had been completed and the final decision had been issued.

### Counter Claim II

76.  Plaintiff did not file the appeal timely because the appeal was due within 30 days of the original determination issued on May 26, 2005, but was not filed until August 22, 2005. The claims are time barred under *Spiegler v. DC*, 866 F.2d 461 (D.C. Cir. 1989), and based upon the stated notice at the end of the Hearing Determination.

### Counter Claim III

77. Pursuant to 20 U.S.C.A. §1415(h)(2) (West Cum. Ann. Pocket Part 2005) and 5 DCMR §3031 defendant is entitled to present evidence on and secure rulings on multiple issues raised at the due process hearing if the Court reverses the Hearing Officer s determination, that were not addressed due to the directed finding, including the issues of :

A. Appropriateness of the IEPs from January 11, 2005 and March 16, 2005;

B. Appropriateness of the Placement Notices from January 11, 2005 and March 16, 2005

C. Whether the program offered to F.C. by DCPS is inappropriate for reasons other than

those adduced before the parent presented her full case.

## Counter Claim IV

78. DCPS has failed to offer FAPE to F.C. for 2004-05 due to inappropriate IEPs, failure to give notice in compliance with the IDEA statutory and federal regulatory requirements as well as local regulations of the Board of Education, the offer of an inappropriate placement at Oyster Elementary School.

## <u>Relief Sought</u>

1. The Complaint should be dismissed with prejudice, the Hearing Officer s determination affirmed, and defendant awarded attorneys fees and costs for defending the action brought by plaintiff herein.

2. Issue a Declaratory Judgment that DCPS must offer a program that actually exists, that the parent can observe in operation before deciding whether to accept the program in order to be found to have offered a FAPE to any student under the IDEA.

3. In the alternative, if for any reason, the Court concludes that any part of plaintiff s claims are meritorious, the proper remedy is to reverse the directed finding, and remand to the Independent Hearing Officer to complete the presentation of DCPS s case and the parents case. A remand to the administrative hearing level enables the Hearing Officer to hear testimony from the witnesses that DCPS sought to present at the hearing---Ms. Guzman and Ms. Brown, and allows the defendant to present the case she was prepared to present through her own testimony and that of Dr. Iseman and Ms. Duncan, as to all of the reasons why the placement proposed for F.C. by DCPS at Oyster School was not appropriate. That evidence was not presented after the directed verdict was entered, as it was superfluous after the parent s motion was granted.

-11-

4.  Affirm the Hearing Officer s determination that F.C. received educational benefit from the services provided at the Lab School during SY 2004-05;

5.  Affirm the Hearing Officer s determination that parents are entitled to reimbursement for the tuition and related services of occupational therapy and speech language therapy they paid for F.C. at Lab from December 8, 2004 through May 26, 2005;

6. Pursuant to the Stay Put provision of the IDEIA, 20 U.S.C.A. §1415 (j)(West Cum. Ann. Pocket Part 2005), and/or 20 U.S.C.A. §1415 (j) (West 2000) plaintiff shall maintain F.C. s current educational placement at Lab School of Washington with full funding during this proceeding, and if the Hearing Officer s ruling is reversed, pending any remand and/or a final determination from this Court.

5. Award the parent attorneys  fees and costs as the prevailing party

6. Award such other relief as this Court finds just.


Respectfully submitted,

/s/

Margaret A. Kohn
DC Bar # 174227
1320 19th Street NW #200
Washington, DC 20036
 202-667-2330
 202-667-2302 (fax)
 Makohn@aol.com

Attorney for Defendant Lynda H. Camalier